Good morning. My name is Rhonda Gordon. My co-counsel sitting at council table here is Mark Barrett. May it please the court. Multiple violations of Mr. Whiteley's due process rights has resulted in these convictions. There is a lack of evidence against him. With a result that is easily impacted like this one, any one of the constitutional violations raised was enough to have produced these wrongful convictions. None of Mr. Whiteley's claims are procedurally barred. The OCA ordered the trial court to address all of Mr. Whiteley's claims because the trial court had found a public counsel. It was objectively unreasonable. The certificate of appealability advises that petitioner may obtain relief if the prosecution threatened petitioner's then wife with the loss of her children if she testified favorably for petitioner. In Webb v. Texas, the judge made threatening remarks to a defense witness that if he lied during testimony, he would be prosecuted for perjury. The Webb court held that the threats exerted such stress on the witness's mind as to preclude him from making a free and voluntary choice whether or not to testify. Similarly, Mrs. Whiteley was threatened she would lose her children if she did not believe her daughter and in any way supported Mr. Whiteley and not her daughter. Has there ever been a factual contention by the state in this case that the Department of Human Services employees did not threaten the mother? No, I believe that the state has conceded that they threatened her. In fact, in one of the briefs, the prosecutor, Austin, did indicate as much. He conceded it. The state courts have not denied that the coercion occurred. In 2005, the Tenth Circuit in U.S. Toronto stated the dispositive question in each case is whether the government actor's interference with a witness's decision to testify was substantial. Interference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering. In 1993, the Tenth Circuit in U.S. v. Smith recognized that warning defense witnesses can violate a defendant's constitutional rights if the warnings actively encourage them not to testify or badger them to remain silent. As a matter of law, Linum v. Illinois has established that threatening parents with loss of children is coercive. The record proves that government actors actively discouraged Mrs. Whiteley from testifying by badgering her not to express belief in support of Mr. Whiteley. What evidence in the record do you have that the prosecution was working with the Department of Human Services? Well, the joint investigation occurred between the Noble Police Department and the DHS staff. So they were gathering information together and sharing it with the district attorney's office. There's one particular district attorney's office record, too, where it was when the DHS workers witnessed the Whiteleys leaving the courthouse after a hearing, observed them kissing and hugging each other for eight minutes. This was on May 31, 2006. One of the DHS workers called Assistant District Attorney Tate to report the incident. Information was shared, and they were working together. Mr. Whiteley has clearly convinced me… But the question is, was it a failure on counsel's part? She did testify. Mrs. Whiteley did briefly testify. So she's there for cross-examination. Correct. So the question is, was it ineffective, I guess, that he did not cross-examine her and ask her what you wanted to go into? Are you asking if it was ineffective for trial counsel not to ask her these questions? Yes, the answer to that is yes. And her post-conviction application… Okay, what about this theory that he needed to stay away from it because there were some things that could come out if he opened the door on the showering incident, for example? Well, first of all, he shouldn't have been in the position of being afraid of what the effects of the pressure would have on her. The pressure from the Department of Human Services should not have existed. In terms of the shower incident, it's our position that it was unreasonable for trial counsel to spend his time trying to exclude that evidence from the trial at the cost of any of Mrs. Whiteley's testimony. But trial counsel has clearly stated that the reason… But that's strategy. I mean, you're saying that that is a wholly inappropriate strategy? I deny that that is… The shower incident, there was some strategy involved with that with trial counsel. But his failure to fully examine Mrs. Whiteley was not strategy. He stated in his affidavit that he was afraid of the effects that the pressure DHS would have on her in the responses she would give on the witness stand. He mentioned DHS was dangling the kids in front of her in an effort to control her. Let me see if I can state it another way. Is it your position that trial counsel, because of the pressure on Mrs. Whiteley, he was basically afraid to ask her anything favorable for fear she would turn on him in an effort to avoid the consequences she might get from DHS? I mean, is that your position? Absolutely. Clarify that for me because I thought your argument was that she was pressured to say things favorable to the prosecution and not say things favorable to the defendant.  But you have argued both in federal district court and in your briefs that the issue was that the pressure imposed, exerted by DHS, resulted in defense counsel deciding not to ask her questions? Yes. That's in your… But that's one of your arguments in your brief regarding the effects of the coercion. Correct. It's part of the evidence of why she didn't testify fully. He was afraid to ask her questions, of fear of what she might say, the repetitive badgering. She was watching her conduct. Okay. And I can go through the evidence of that. If counsel doesn't ask the questions, it's hard to see how we can know that there was actual prejudice because maybe I think the OCCA's position was that regardless of whether there was coercion, it didn't affect her. And now we don't have a record of whether it affected her because the attorney didn't ask the relevant questions. We have a post-conviction record. We have affidavits from Deb Maddox. That's Mrs. Whiteley's counsel for the children's court matters. She has averted that it was a coercion that caused Mrs. Whiteley not to testify. We have a post-conviction record establishing that. True, it was not established at the trial. Are you telling me then that this post-conviction record changes the whole chemistry of the application of AEDPA standards to this and that because you created this record, we ignore what the OCCA said? The OCCA, basically what they're saying is they can't reconcile the fact that she got up and testified at sentencing with the fact that she didn't testify at trial. They're speculating that there's some reason beyond the coercion for her failure to testify, but there's absolutely nothing in the record that supports that. And that's wholly unreasonable and no jurist would ever think anything like that, right? We say no reasonable jurist would find that the government's conduct did not substantially interfere with her choice not to fully testify. Wait, wait, her choice or the attorney's choice not to ask her questions? Her choice. We're saying her choice. Trial counsel was ineffective. He didn't have any meaningful conversations with her prior to the trial to learn what her testimony would be. Well, no. The question under AEDPA was, was the OCCA so unreasonable that no jurist who can walk into bubble gum would decide consistent with that? Yes. I think we've talked about that claim enough, so I'll move on to the false evidence claim, Your Honor. And we'll just say as a concluding remark on that, it is essential to the protection of Mr. White's police constitutional rights and those of all parents facing allegations of abuse and neglect that this court grant relief and put this unconstitutional practice to rest. The DHS workers in documenting their coercion against Mrs. Whiteley demonstrate that they see nothing wrong with this practice. They are tipping the scales of justice in their favor based on their assumptions of guilt. Regarding the false evidence... Let me tell you, the problem I'm having with this part of the case is that it's like retrying the thing. Yes, maybe it would have been better to have your own expert. Maybe the cross-examination of McKinnon, is that who it was? The state's? McKinnon, yes. The cross-examination of McKinnon was not enough, and you should have tried it this way. It seems to me you're talking about alternative and maybe better trial strategies, and that doesn't work under the AEDPA. It seems to me a lot of this stuff was in front of that jury. Your Honor, trial counsel did no investigation of available defenses, none. He did not talk to any medical expert, not even the state's own medical expert that would be testifying at trial. Therefore, he did not obtain the studies the medical expert would be testifying about, and he was not prepared to refute them. Well, McKinnon testified that there was no physical evidence in over 100 to 160 incidents. Yeah, that's right, and McKinnon didn't know what had occurred when he testified about these unknown studies. We don't know the names of the authors, what form of sexual abuse they describe in the studies. We have no idea. It simply says that 90% of child sexual abuse cases... Okay, maybe the cross-examination wasn't the best way to present it, but your way of proposing it now is not the only way. Yes, Your Honor, but trial counsel was not in any position to make a strategic decision of how to present the defense case because he didn't investigate. This case is like Battenfield v. Gibson. This case is like Hooper v. Mullen. This case, with respect to the forensic defense, is like Stevens v. McBride. This is a case in which trial counsel made no preparation for trial, and he was flying by the seat of his pants during the trial, investigating his defenses through the state's experts, not knowing what they would say, and by and large it all came down against his defendant. Well, let me ask you on the prejudice problem. Did you make a showing in state court post-conviction or earlier that a particular witness, expert witness, would have said things in addition to what the actual defense witness said? We showed through our post-conviction expert affidavits, Your Honor, that an informed expert viewpoint with respect to the medical evidence and with respect to the forensic interview defense would have exposed the insufficient factual basis of the state's experts. McKinnon did not know what form of abuse had occurred. Tracy Colling, the forensic interviewer, did not know that Officer Cox had interrogated the girl in between her first and second interview. Don't you need to go further and show that if there had been the proper preparation by the defense expert, the defense expert would have said something more helpful or, yes, that you would have gotten more helpful information, not just that the expert didn't do a good job preparing, not just that the attorney didn't do a good job of selecting an expert, but that if everything had been done right, you would have had some particular favorable evidence? We do need to show that, Your Honor, and we have. And what was that? Through Dr. Stimke's affidavit, he has assessed the girl's allegations, he reviewed the transcripts of her testimony, he has opined that the allegations are rather difficult to believe from a medical perspective, her descriptions of forced anal rape in which the defendant keeps attacking the victim and she's fighting back, but it doesn't hurt and it doesn't make her bleed. Well, that came out at trial, did it not, that that was that you're more likely to have physical signs of the attack if there was resistance? A greater chance of injury. If there was no lubrication, yes. A greater chance, as opposed to this is rather difficult to believe and we have great concern here about these allegations. I need to sit down so that my associate can have a minute for a while. Excuse me, you're not going to be allowed to rebut things that aren't presented by counsel, so if you have something to say on the merits, I think you better get it done now. Okay. It's not fair to the state for you to... I understand, Your Honor. I would have one concluding remark here. No reasonable jurist would believe that trial counsel's failure to investigate Mr. Whiteley's defenses is objectively unreasonable. In a case where there is no physical evidence, no eyewitness, no corroboration of any kind, and no admission by the defendant, there is nothing but the inconsistent testimony of an accusant. Mr. Whiteley's case is like Holstenbach v. White, Pavel v. Holland, the Battenfield, the Cooper, and the Stevens-McBride case, Your Honor. Thank you.  I'm Sherry Johnson from the Oklahoma Attorney General's Office. On behalf of... Move the mic closer to your mouth. You're self-spoken. Should I start over? I'm sorry. Go ahead. Thank you. I think I'd like to pick up right where counsel left off with the ineffective assistance of counsel claim. And just to correct a few things, counsel asserted that trial counsel David Smith did not investigate the viability of procuring their own medical expert. In the affidavit that was presented at the post-conviction hearing, Mr. Smith's affidavit does say that he did inquire about the likelihood of injury with that type of assault and was told that it was possible that no injury could occur. Therefore, he did not pursue further leads. So it isn't that he did not make any investigation. He did. He found it to not be a viable avenue. Well, I mean, I'm going to accept what you say as the extent of his investigation, but that's pretty minimal, isn't it, on a case that has potentially serious medical questions in it? I found out that there might not be any physical evidence, so I didn't look any further. I mean, the corollary to that is to find out if there might be injury, right? I agree, but I think the other issue that came out was that the state's expert conducted an exam, and that exam showed no physical injury, and that was favorable to attempt to show through the state's own expert that, look, we have this allegation that there were hundreds of forceful, unlubricated anal rapes, and we have absolutely no indication that this child has any injury at all. So attempting to challenge favorable testimony would not necessarily be a reasonable strategy. Would you agree that there are some cases where the courts have held it was ineffective assistance not to get a medical expert, even though there was an effective cross-examination of the state's expert? Yes, I believe I've read cases of those sort. I don't think this is one of those cases. I think that the defense counsel's strategy was quite brilliant. What he did was get the state's own expert to concede that the defense's theory was possible and that there was a greater chance of injury based on the child's allegations. He did it without putting a higher gun on the stand that the first question would be, how much are you being paid to testify here? And I think that added credibility for the jury. The fact that that strategy did not work does not mean that David Smith was ineffective. I asked your opposing counsel if there was any evidence in the record that the state or that the Department of Human Services did not threaten the mother with losing the children if she supported Mr. Whiteley. Are you aware of any? I want to be sure because there's a negative there. Could you ask that one more time? I'm sorry. Now I have to rethink my question. I'm sorry. Is there evidence in the record that shows that the state or that the Department of Human Services did not threaten the mother with the loss of her children? Well, I think the petitioner's own post-conviction records, the DHS records, if you go through them, and we don't know if that's a complete set of records. Let me ask you this. Has the state ever contested that? Have they ever said it did not happen? Don't give me some inference from their brief. I can't answer that accurately in a yes or no question because the thing is, in the state's position, absolutely there was pressure due to the concurrent deprived proceeding. But the problem is that pressure would have happened whether there was a criminal case or not. The DHS, the Department of Human Services It wouldn't have happened because if there wasn't a criminal case, there wouldn't have been any pressure against her not to participate. That's not correct, Your Honor, and I think that's something that we've kind of missed. The victim's allegations that were kept out of the trial by trial counsel were that this sexual abuse began in Elgin and that Mom knew about it and Mom told her it won't happen again and she had a fight with the petitioner. And then later, the abuse kept happening in Noble and those are the crimes that Mr. Whiteley was being tried for. Mrs. Whiteley's interaction with DHS was related to her inability to protect her child, her willingness to not report it, when her child told her she discovered that the child was being sexually abused. That pressure would have been there whether there was a companion criminal case or not. Well, I mean the pressure alleged in this case is that she was pressured basically not to testify in support of him. You agree with that, right? I don't agree that that was pressure exerted. The pressure exerted was DHS attempting to secure permanency for the victim of a sexual abuse and to resolve the custody issue. Those two things were not connected. Do you agree there was a joint investigation going on? Actually, I don't believe that the record shows that if it was the same individuals investigating. I'm not sure because we're dealing with a criminal case here. Do you agree that Department of Human Services personnel were calling the prosecutors and reporting to them things they were seeing between the Whiteleys? Absolutely, and that could be not in regards to the criminal case. We don't know that. It could be that Mrs. Whiteley's treatment plan, which we have some of it through the post-conviction records, required her to discontinue her relationship with the man that was raping her child. That's not exactly an unreasonable request by the state when we're trying to reunify a child with her mother. So I guess my question, but that's not what I, I don't think that's responsive. I'm sorry. I think my, I think what I'm, the DHS called the prosecutor and said, hey, we saw them outside, you know, embraced, right? For a period of eight minutes or whatever it was. I believe that is in the records, Your Honor. Okay, so that's obviously, they're not calling the prosecutor, is the same prosecutor handling the custody proceeding? That can happen in Oklahoma, Your Honor. I'm not sure if it did in this case. Okay, so you're not saying that that wasn't related to the criminal case. You're saying that you don't think there's evidence to show it. That the alleged coercion was directed at interfering with Mr. Whiteley's attempt to present a specific testimony from his wife? No, I don't think that has anything to do with it. My point is Mrs. Whiteley had a choice to make, and that choice would have had to have been made whether she was, whether Mr. Whiteley was being prosecuted or not. Moreover, even if Mr. Whiteley had been acquitted, that would not have stopped DHS from determining and meeting its burden by clearing convincing evidence that her parental rights needed to be terminated for fair to protect her child from sexual abuse. Those were two separate court proceedings. Moreover, the petitioner has not shown any Supreme Court or finding clearly established federal law that says that the state's efforts to prosecute a deprived proceeding concurrently with a criminal case is somehow interfering with the defendant's right to present a defense. Ms. Johnson, let me understand. In a more global sense, is what you're saying, is that when you have a child abuse case in the administrative proceedings of DHS, and if there is, in all cases, that you're going to want to protect that child and you want the parent to protect the child, correct? Yes, sir. And it just may so happen that that may bleed over into that concept, into a criminal case, if there is a criminal case. Yes, Your Honor. But the effort here is to protect that child and get that parent to support that child and protect her. Yes, Your Honor. I would also point out that no evidence was developed during the post-conviction proceedings that DHS's handling of this case, the deprived proceeding, the sexual abuse proceeding, was in any way different in Mrs. Wiley's case than it would be in a case that there was not a companion criminal case. That would be the kind of evidence you would want to present at a post-conviction evidentiary hearing, and it was not. Thank you. What about the expert testimony, then? Thank you. Did this Court have any further questions on that or anything that you would like me to cover? Well, opposing counsel made some pretty good arguments, I thought. How do you justify the defense of the prosecution? Yes. How do you justify the defense counsel as being competent and not both acting beneath the standard of care and creating prejudice by not pursuing its own expert? Wait, you talked about that. I started off with that, Your Honor. I'm sorry. I was trying to help you get to your next point. I did. I kind of flip-flopped. In her defense, I changed the subject. Your Honor, I think my main point on the ineffective assistance of trial counsel issue is simply that, as Judge Murphy pointed out, it was strategy. No two lawyers practice law the same way, and I believe the Supreme Court has recognized that even when there's an adverse result, even the most experienced attorney can look back and say, I should have done things differently, and I think Mr. Smith's affidavit kind of shows that. He does not admit to being ineffective. He says, in hindsight, I could have done things differently, and I think the state court correctly recognized that with hindsight, sure, you could do something different. There are a lot of different ways to defend this case. The strategy that trial counsel employed was not unreasonable. There was another component to the ineffective assistance claim, and that had to do with evidence, which was having witnesses testify to the lack of credibility of the victim. Yes, Your Honor. One thing that was confusing is who were the witnesses that weren't called. The state trial judge in the post-conviction proceedings refers to a certain group of witnesses, and it's different from what the federal district court was considering, and I wasn't clear what the claim was regarding what witnesses and why there wasn't a problem with failure to call some of these. Well, the state court considered a group of affidavits and proposed witnesses. They were essentially friends, neighbors, family of petitioner. Was that a different cluster of witnesses from what the federal district court was considering because the names don't seem to match? I did not notice that in my review of the case. I have a stack of affidavits that were part of the post-conviction evidentiary hearing exhibits, and I used that to refer to the names that were in the briefs. There was evidence, however, that the child was a fibber, right? Absolutely, Your Honor.  One of the child's classmates testified that the child had a reputation in school for being a liar. Also, petitioner's father testified at trial and showed pictures and gave testimony about how some of the child's explanations were not physically possible as far as her being able to hide under the bed or in the closet. Trial counsel also argued about the child's character for truthfulness during closing argument. Let me switch gears on you. Okay. There's been discussion on the first issues about DHS's pressure, if that's what it was. There was the indication of this, and it's in the record, of this Elgin incident in the shower. Yes, Your Honor. Then there were some vague, vague references to other things, other bad acts. Is that in the record, what these other things were? Am I misreading the briefing that there was some oblique reference to other things in addition to the Elgin incident? You know, I do not recall that. I would not say that you're incorrect, but I believe that the main issue was the shower incident in Elgin and Mom finding out about it. The jury never heard that. Those were completely excluded as far as Mom knowing and all of that, and that's what I find so troubling about this. Okay. Just generally, as the condition of the record, do you know of anything that's in the record of evidence, whether it's any evidence that there were other incidents of bad sexual behavior by Mr. Whiteley other than this Elgin incident? And, of course, the things he was being tried for. I mean, if you can't— You know, the only thing that comes to mind, I know he was being tried for anal rape, but the victim also alleged that he would expose himself, and I don't recall if that was part of the allegations that were at trial or if that was part of what was alleged that went on in Elgin. Okay. Did that come into evidence in this trial, the exposure? Because what I'm wondering about is, were there other things they were worried about? If they opened the door, it was wide enough to bring in these other things in addition to the Elgin incident. I don't believe that's the case, Your Honor. I believe that the victim did testify about exposing— Well, then maybe the reference was that if the door was open to get in the Elgin incident, Lord knows where that's going to go. Well, that was a concern because it can show grooming or preparation for further acts, which was what appellate counsel testified to at the evidentiary hearing. That's why she was very happy that that evidence was successfully excluded by trial counsel. Okay. Counsel, your time has expired. Thank you, Your Honor. Thank you. I would ask this Court to please affirm the denial of hate misrelief. Give him a full minute. I have 30 seconds, so you have a minute to get— May it please the Court an answer to the question regarding what the record shows about the state owning this? The answer is on page 6 of the response to the post-conviction application in the district court where the assistant district attorney says she was told that if she supported her husband and refused to support her daughter's disclosure, she was at risk of losing it. She made that choice. So the state has absolutely owned that. And by owning that, they have owned depriving Mr. Wiley of a fair trial because it was critical to his defense that the jury not believe that there was some reason why his wife— Do you agree that a criminal prosecution for child sexual abuse is but one piece of a bigger universe of proceedings that are supposed to support the child? Do you agree with that? I believe there is that universe. In every case, there is pressure on the parents to support that child. I believe that's what's happening with the Department of Human Services and Oklahoma-Huron. I believe it's unconstitutional. I believe that you're absolutely right, it's pervasive, but I believe it is pervasive in the wrong way and in this case depriving Mr. Wiley of a fair trial. So you're telling me that you think in investigations for child sexual abuse, when there is a criminal prosecution as a part of that, that it is inappropriate to indicate to the parents that they are to be supportive of the child? Yes, if that can be read as saying you have to adopt one point of view or the other. And in this case, it was read that way. Because what she was saying that they objected to was that she believed Larry Wiley. She wasn't saying that she thought everything was okay if he abused somebody. She wasn't saying that she didn't care about her daughter. What she was saying was that she believed Larry Wiley and she had absolutely every right to believe that and still have custody of her children. And she would not be supporting her child in that way, correct? That's what the DHS was saying. So I'm backing up. I'm not saying... I understand your argument. I understand it. I'm not saying the DHS does that in every case. I don't want to overstate, but I'm saying it is a real problem. I understand your argument. We understand your argument. Thank you, Counsel. Thank you. Case is submitted. Counsel are excused.